Booth, J.,
delivered the opinion of the court:
The findings disclose an unusual state of facts, sor unusual that the court deems it wise to supplement them with written comments. The corporate name of the claimant company suggests its business, and while engaged therein accidentally *280 discovers the unique cave now ¡mown as Lewis and Clark Cavern National Monument. Whatever the value of the cavern from a scientific and scenic standpoint may be, it is eliminated from the case; no claim is predicated thereon, for the whole amount claimed is for reimbursement of funds expended for specific purposes. However commendable it may be to carefully preserve and make accessible to the public a strange and unusually peculiar formation beneath the earth’s surface, it can not, under the circumstances presented in this case, become the basis of a claim either legal or equitable against the rightful owners of the property. From the findings it is apparent that at the time of the discovery of the cave the claimant company knew that the title to the property was not in it; that the money alleged to have been expended in building stairways, doors, etc., was so expended with full knowledge of this fact; that while there was a possibility of acquiring title under the public-land laws all sums expended in permanent improvements until said title was acquired were entirely voluntary. In 1905 the claimant company commenced proceedings to acquire title; in 1906 its application was rejected because of adverse ownership. In 1907 it instituted legal proceedings to test the title of the adverse owner, in which it was entirely unsuccessful, the final result being the taking over of the property by the Government under the act of June 8, 1906. In July, 1897, this very tract of land had been classified by the Interior Department as nonmineral, a most potent obstacle to claimant company’s first application for patent. All these facts constitute themselves such a formidable array of well-known and easily ascertainable difficulties in the way of claimant company at the time of the discovery that it is difficult to see upon what supposed hypothesis of subsequent reimbursement it voluntarily spent the sums now claimed. Why it did not defer incurring the total claimed expense of $40,000 until it was secure as to title is a matter of most pertinent inquiry. Treating the subject as a court must treat it, we can not entertain a contention that the courts and the Interior Department were in error, and that the claimant company might have obtained a patent but for the intervention of the President under the act of June 8, 1906, *281 for it is apparent from the record that during the existence of these various controversies, and at the time litigation was pending respecting the title to the property, much, if not the greater part, of the sums claimed were expended. The claimant company doubtless expended some money as alleged in its petition, but from the competent evidence in the record it is, however, absolutely impossible to even venture an amount, and we can not advise Congress as to what might be a reasonable appropriation in the premises unless the record sustains the proposed suggestion. That the claim is not either a legal or equitable one against the Government is so obvious as to require no further elaboration. Claimant company, it is true, expended all the sums claimed with a view of possessing the property, but we can not hold because it was subsequently unable to do so, by reason of the intervention of others acting in strict accord with positive law, that a claim arises, either legal or equitable, against the defendants. The cavern as it exists is a distinct contribution to the world’s wonders. As a matter of special and general interest to the public it is undoubtedly a discovery of merit and consequence. From a scientific point of view it is valuable and instructive. These are subjects, however, with which the court as a proposition of law has nothing to do. Under the Tucker Act they appeal alone to the bounty of Congress.
The findings, together with a copy of this opinion, will be transmitted to Congress. It is so ordered.